Kenneth R. Silverman, Esq.
Attorney for Defendants Keya Morgan
And Keya Gallery
32 Middagh Street, #16
Brooklyn, NY 11201
(718) 852-3082

_____ ____X

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

PETE LIVINGSTON,

        Plaintiff

v.

KEYA MORGAN AND KEYA
GALLERY,

        Defendants,
_____X

ELECTRONICALLY FILED

No. 07 CV 7835 (RMB) (KNF)

DEFENDANTS KEYA MORGAN
And KEYA GALLERY'S NOTICE
OF MOTION AND MOTION TO
DISMISS THE PLAINTIFF'S
COMPLAINT IN ITS ENTIRETY,
MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT
THEREOF

NOTICE OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
PURSUANT TO FRCP 12 (b) (1) and 12 (b) (6)

PLEASE TAKE NOTICE that upon the annexed Memorandum of Points and Authorities,
dated April 5, 2008, all Exhibits and Declarations attached thereto, and all pleadings in
this matter, the Defendants KEYA MORGAN and KEYA GALLERY will and hereby
does move this Court before the Honorable Judge Richard M. Berman, U.S.D.J., at the
Courthouse, located at 40 Centre Street, Courtroom 706, New York, New York 10007, on
submission, for an order pursuant to FRCP 12 (b) (1) and FRCP 12 (b) (6), dismissing the
Second Amended Complaint in its entirety, for costs and reasonable attorneys' fees,
together with such other and further relief as this Court deems just and proper. Pursuant
to Judge Berman's instructions, Plaintiff has until April 23, 2008 to serve and file
opposition papers.

Dated: April 5, 2008

S/ _____

Kenneth R. Silverman, Esq.
Attorney for Defendants Keya
And Keya Gallery
32 Middagh Street, #16
Brooklyn, NY 11201
(718) 852-3082

To: Steven Ward Williams, Esq./
Suzanne K. Lehman, Esq.
Smith, Sovik, Kendrik & Sugnet, P.C.
250 South Clinton Street
Syracuse, NY 13202
(315) 474-2911

William M. Simpich
1736 Franklin Street, 10th Floor
Oakland, CA 94612
(510) 444-0226

Tesfaye W. Tsadik
1736 Franklin Street, 10th Floor
Oakland, CA 94612
(510) 444-0226

Kenneth R. Silverman, Esq.
Attorney for Defendants Keya Morgan
And Keya Gallery
32 Middagh Street, #16
Brooklyn, NY 11201
(718) 852-3082

_____ X

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____ X

PETE LIVINGSTON,

         Plaintiff

v.

KEYA MORGAN AND KEYA
GALLERY,

         Defendants,
_____ X

ELECTRONICALLY FILED

No. 07 CV 7835 (RMB) (KNF)

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS KEYA MORGAN AND
KEYA GALLERY'S MOTION TO DISMISS THE COMPLAINT
PURSUANT TO FRCP 12 (b) (1) AND 12 (b) (6)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................... 6

STATEMENT OF FACTS................................................8

ARGUMENT...........................................................9

POINT I: THE COMPLAINT IS TIME-BARRED – 17 U.S.C.
507 (B)............................................................9

POINT II: THE COMPLAINT FAILS TO SHOW
SUBJECT MATTER JURISDICTION – FRCP 12 (B) (1)....................10

A.    Plaintiff's Misrepresentations to the Copyright
Office Invalidate His Registration – 17 U.S.C.411............................10

B.    The Court Has No Jurisdiction over the State Law
Conversion Claim................................................16

        1.    Preemption of State Law Claim
              Under the Copyright Act – 17 U.S.C. 301......................16

        The Court Does Not Have Diversity Jurisdiction
        Over the State Law Claim – 17 U.S.C. 1332...........................18

POINT III:    DEFENDANTS ARE ENTITLED
              TO ATTORNEY'S FEES -
              17 U.S.C. 505................................................19

CONCLUSION........................................................20

## TABLE OF AUTHORITIES

**Federal Cases**

Bell Atlantic v. Twombly, Slip. Opinion, No. 05-1126 (2007)..............16

Cortect Indust's. Inc. v. Sum Holding L.P., 949 F.2d

42 (2d Cir. 1991)...................................................................11,13,19

EEOC v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir. 2000)....9,11

Kelly v. LL Cool J., 145 F.R.D. 32, 36 (S.D.N.Y. 1992)..................11

Kramer v. Time Warner, Inc. 937 F.2d 767, 773 (2d Cir. 1991)..........11,13,19

Morris v. Business Concepts, Inc. No. 99-CV-59 (RCC), 2000 U.S. Dist. Lexis 3835, 54

U.S.P.Q.2d (BNA) 1561 (S.D.N.Y. Mar. 28, 2000)........................ 11,13,14

Netzer v. Continuity Graphic Assoc's, Inc. 963 F. Supp.1308,

1315 (S.D.N.Y. 1997)................................................... 10,18

Price v. Fox Entertainment Group, Inc., 473 F. Supp.2d 446

(S.D.N.Y. 2007)........................................................ 10

Russ Berrie & Company v. Jerry Elsner, 482 F. Supp. 980, 1980 U.S. Dist. Lexis 9824,

205 U.S.P.Q. (BNA) 320 (S.D.N.Y.

1980)...................................................................13,14,16

Salinger v. Random House, 811 F.2d 90, 95 (2d Cir. 1987)...............17

Syntek Semiconductor Co. v. Microchip Tech. Inc., 307 F.3d 775, 781 (9th Cir. 2002)

5 U.S.P.Q. (BNA) 320 (S.D.N.Y. 1980).......................................15

Torres--Negron v. J & N Records, LLC 504 F.3d 151, 84 U.S.P.Q.2d 1769 (United States

Court of Appeals, First Circuit 2007).......................................15

Universal Athletic Sales Co. v. Salkeld, 340 F. Supp. 899 (W.D.Pa.1972), *rev'd on other grounds*, 511 F.2d 904 (3d Cir. 1975)............................................16

Whimsicality, Inc. v. Rubie's Costume Co., Inc., 891 F.2d 452, 456 (2d Cir. 1989).................................................................. 13,14,19


**New York State Cases**

Vigilant Ins. Co. of Am. v. Hous. Auth., 87 NY2d 36, 44 (1995)............................................................................16

Federal Rules

FRCP 12 (b) (1)...........................................................6,7,10,14,15,18

F RCP 12 (b) (6)........................................................ 6,10,15,16,18

17 U.S.C. 106...............................................................8,17

17 U.S.C. 202...............................................................8,17

17 U.S.C. 301 (a)..........................................................7,16,18

17 U.S.C. 407 (1).........................................................7,14

17 U.S.C. 408 (C)........................................................7,12,13

17 U.S.C. 410 (C)........................................................16

17 U.S.C. 411

(a).....................................................................,7,10,11,14,15

17 U.S.C. 412 (2)........................................................16

17 U.S.C. 505...............................................................19

17 U.S.C. 507 (B)........................................................6,9,10

28 U.S.C. 1332..............................................................18,19

## PRELIMINARY STATEMENT

Defendants Keya Morgan and Keya Gallery submit this Memorandum of Points and Authorities in support of its Motion to Dismiss the Second Amended Complaint of Plaintiff Peter Livingston pursuant to Federal Rules of Civil Procedure ("FRCP") 12 (b) (1) and 12 (b) (6). Defendant's arguments with respect to this suit for Copyright Infringement and a state law claim for Conversion are straightforward.  Firstly, it is clear from the allegations as pleaded that the Complaint is time-barred under 17 U.S.C. 507 (B). The statute of limitations for copyright infringement is three (3) years. Plaintiff alleges that he first asserted a claim for sole ownership of the copyright in fifty –eight (58) photographs of Marilyn Monroe (the "Monroe photographs") taken by his deceased father in January, 2004, and alleges he registered the copyright in August, 2004. Plaintiff further alleges that he learned of Defendants' assertion of copyright in August, 2004. As plaintiff commenced this suit on September 5, 2007, the statute of limitations on his claim for sole-ownership of the copyright had already run prior to his filing this lawsuit, and therefore the claim is time-barred.

Defendants also argue that the Court lacks Subject Matter Jurisdiction to hear Plaintiff's Claim. The first argument with respect to jurisdiction is that due to misrepresentations to the Copyright Office, Plaintiff's copyright registration in the Monroe photographs is invalid under 17 U.S.C. 411, and therefore the Court lacks Subject Matter Jurisdiction. Plaintiff alleges that each photograph is subject to a valid copyright registration. However, Plaintiff obtained one copyright registration for all of

the photographs, and the registration description indicates that he registered "Digital Contact Sheets." Plaintiff misrepresented to the copyright office that he was copyrighting the Monroe photographs as a group work. Section 408 (c) of the Copyright Act allows registration as a group work if the material was first published in a periodical. The Monroe photographs were not first published in a periodical, and are therefore not eligible to be registered as a group. Plaintiff's representation that the photographs could be registered as a group invalidates his registration.

Further, Plaintiff misrepresented the year of publication to the Copyright office. The registration information indicates a publication date of September 21, 1999. The photographs were actually first published in a book by the author Janet Jackson in 1972, and this misrepresentation also invalidates his copyright registration in the Monroe photographs. Plaintiff's third misrepresentation to the Copyright office concerned what was being deposited. The allegations as pleaded demonstrate that plaintiff did not have access to the Monroe photographs, and only registered the copyright after Defendants claimed possession. Without access to the photographs, Plaintiff could not have complied with the deposit requirement under the Copyright Act, which requires two complete copies of the best edition. Section 407 (1). A failure to meet the deposit requirement invalidates the copyright. Absent a valid copyright registration, the Court lacks Subject Matter Jurisdiction and must Dismiss the Complaint under FRCP (b) (1); 17 U.S.C. 411.

Additionally, the Court has no jurisdiction over the state law claim for conversion. This claim is preempted by the federal Copyright Act. 17 U.S.C. 301. In this claim, Plaintiff is merely alleging that his copyright in the Monroe photographs gives him legal title over the actual original photographs and negatives. Plaintiff misconstrues the nature

of copyright, as copyright interests pass separately from the physical object. 17 U.S.C. 202; 17 U.S.C. 106. Furthermore, apart from preemption, the Court has no Diversity Jurisdiction over the state law claim, as the amount in controversy is far less than $75,000. Plaintiff alleges that Defendant Keya Morgan informed the Plaintiff in January, 2004 that he had obtained the Monroe pictures, as well as negatives and contact sheets at auction. Defendant Keya Morgan's receipt from Swan Auction House shows that he purchased Contact Sheets only for $3,800, far less than the $75,000 amount in controversy needed for Diversity jurisdiction.

Lastly, defendants are entitled to reasonable costs and attorney's fees incurred in defending facially deficient claims based on a time-barred complaint, and a copyright registration procured by misrepresentation.

## STATEMENT OF FACTS

This action was commenced September 5, 2007. Plaintiff has since amended his Complaint twice (2), the Second Amended Complaint having been filed March 18, 2008, pursuant to Your Honor's deadline at a Pre-Motion Conference held March 11, 2008. In the Second Amended Complaint, Plaintiff alleges that he is the sole owner of the copyright to fifty-eight (58) photographs of Marilyn Monroe taken by his deceased father, Carl Perutz (paragraphs 6 and 7). It is also alleged that "On or about October 22, 2003, Defendant Morgan claimed possession of a number of Monroe pictures, and that the Defendant informed the Plaintiff during the week of January 16, 2004 that he had obtained fifty-eight (58) original Marilyn Monroe prints at auction (paragraph 8). Plaintiff alleges that he claimed sole ownership in the Monroe photographs during the

week of January 16, 2004 (paragraph 11), and registered a valid copyright in the individual photographs on August 3, 2004 (paragraph 10). Plaintiff alleges that Defendant Keya Morgan asserted copyright over the photographs on or about August 26, 2004 (paragraph 12).

Plaintiff also brings a state law claim for Conversion, which argues that his alleged copyright in the Monroe photographs gives him legal title to the physical objects (paragraphs 24-27).

Defendant argues in this Memorandum that 1) the Complaint is time-barred under the relevant Statute of Limitations, as the suit was commenced more than three (3) years after Plaintiff's claim for sole-ownership of the copyright accrued; 2) that the Court lacks Subject Matter Jurisdiction due to misrepresentations to the Copyright Office that invalidate Plaintiff's registration, Preemption of the State law claim for Conversion by the Copyright Act, and lack of Diversity Jurisdiction due to the amount in controversy being less than $75,000. Defendants also argue that they are entitled to costs and attorney's fees for having to defend facially deficient claims based on a registration procured by misrepresentation, and time-barred by the Statute of Limitations.

## ARGUMENT

### POINT I. The Complaint is Time-Barred – 17 U.S.C. 507 (b)

In a Motion to Dismiss, the Court assumes the facts as alleged to be true. EEOC v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir. 2000). Plaintiff's Complaint alleges sole ownership of the copyrights to fifty-eight (58) original Marilyn Monroe photographs allegedly taken by Plaintiff's father Carl Perutz (Paragraphs five and six).

According to the Complaint, on October 22, 2003 Plaintiff learned that Defendant Morgan claimed possession of a number of the Monroe pictures (paragraph 8). Plaintiff alleges that he first asserted sole ownership on January 16, 2004 (paragraph 11), and registered his copyright in the photographs on August 3, 2004 (paragraph 10). Plaintiff also alleges that he learned of Defendants' assertion of copyright on August 26, 2004 (paragraph 12).

The Copyright Act specifically delineates a three (3) year statute of limitations for bringing an action for copyright infringement. 17 USC 507 (b); Netzer v. Continuity Graphic Assoc's, Inc. 963 F. Supp.1308, 1315 (S.D.N.Y. 1997) Specifically, the Act states, " No Civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."

Based on the allegations as pleaded, Plaintiff's claim for sole ownership of the copyright accrued on January 22, 2004, and certainly no later than August 26, 2004. This action was not commenced until September 5, 2007, and is therefore time-barred under the three-year statute of limitations. 17 USC 507 (b); Netzer v. Continiuty Graphic Assoc's, Inc. Id; Price v. Fox Entertainment Group, Inc., Id. As Plaintiff has failed to state a claim upon which relief can be granted with respect to Copyright Infringement, the Complaint should be dismissed pursuant to FRCP 12 (b) (6).

POINT II. The Complaint Fails To Show Subject Matter Jurisdiction – FRCP 12 (b) (1)

A. 17 U.S.C. 411 - Plaintiff's Misrepresentations To The Copyright Office Invalidate His Registration

In his Complaint, plaintiff alleges that he "registered his copyright of the Monroe Pictures on August 3, 2004. Each of the Monroe Pictures is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights on August 3, 2004…(Paragraph 10). For purposes of this Motion to Dismiss we must accept this allegation as true. EEOC v. Staten Island Sav. Bank, Id. Nevertheless, an examination of the actual copyright registration on file with the copyright office, and the relevant statute and case law, demonstrate that Plaintiff's copyright in the Monroe photographs is invalid due to misrepresentations made to the Copyright Office.

A properly pleaded complaint alleging copyright infringement must allege: 1) which specific original works form the subject of the copyright claim; 2) that Plaintiff owns the copyright in those works; 3) that the copyrights have been registered in accordance with the statute; and 4) by what acts and during what time the defendant infringed the copyright. Kelly v. LL Cool J., 145 F.R.D. 32, 36 (S.D.N.Y. 1992). Proper copyright registration is a condition precedent to subject matter jurisdiction over copyright infringement claims. 17 U.S.C. 411 (a); Morris v. Business Concepts, Inc. No. 99-CV-59 (RCC), 2000 U.S. Dist. Lexis 3835, 54 U.S.P.Q.2d (BNA) 1561 (S.D.N.Y. Mar. 28, 2000). Additionally, all documents attached to and referred to in the complaint and matters of judicial notice are properly before the Court. Cortect Indust's. Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir. 1991); Kramer v. Time Warner, Inc. 937 F.2d 767, 773 (2d Cir. 1991). As Plaintiff has referenced his copyright registration in his Complaint (paragraph 10), the Copyright search result, which reflects the copyright registration on file with the United States Copyright Office, is properly before the Court. (Attached to Declaration of Kenneth R. Silverman, Exhibit 1).

Plaintiff's first misrepresentation to the Copyright Office was that he was registering a group work, when in fact the individual photographs allegedly copyrighted do not qualify for

group registration, as discussed below.  The actual copyright registration on file with the United States Copyright Office lists the following registration information:

| | |
|---|---|
| Type of Work: | Visual Material |
| Registration Number/Date | VA0001266038/2004-08-03 |
| Title: | Carl S. Perutz photos of Marilyn Monroe |
| Description: | Digital Contact Sheets |
| Copyright Claimant: | Pete Livingston |
| Date of Creation: | 1960 |
| Date of Publication: | 1999-09-21 |
| Authorship on Application: | Carl Perutz |

As the registration description indicates, Plaintiff registered <u>Digital Contact Sheets.</u> However, Plaintiff alleges in his Complaint that he copyrighted the individual Monroe photographs taken by his father (paragraph 10). If he did in fact register the individual photographs, as he alleges, then he did so by representing to the Copyright Office that he could register them all in one copyright registration as Digital Contact Sheets. Plaintiff misrepresented to the Copyright Office that the individual photographs were group works under 17 U.S.C. 408. The statutory requirements for copyright registration of group works are set forth in Subsection 408(c), which allows a single application for "group works by the same author" if:

all first published as contributions to <u>periodicals,</u> <u>including newspapers, within a twelve-month period,</u> on the basis of a single deposit, application, and registration fee, under the following conditions:

(A)    If the deposit consists of one <u>copy of the entire issue of the</u> <u>periodical,</u> or of the entire section in the case of a newspaper, in which each contribution was first published, and

(B)    If the application identifies each work separately, <u>including</u> <u>the periodical</u> containing it and its date of first publication. 17 U.S.C. 408 (c) (2) (A) (B) (emphasis added)

17 U.S.C. 408 (c) allows registration of defined group works, specifically works first published as contributions to periodicals, including newspapers. In the case at bar, the photographs in question were first published in the Janet Jackson book "Marilyn Monroe." The year of publication for the Jackson book, which plaintiff alleges contains all his father's Marilyn Monroe photographs (see paragraphs fourteen (14) and fifteen (15) of the Complaint) was 1972. This is the date indicated on the Copyright notice of the book, which appears on the front page. As Plaintiff references the Janet Jackson book in paragraphs fourteen (14) and fifteen (15) of the Complaint, it is properly before the Court. Cortect Indust's. Inc. v. Sum Holding L.P., Id; Kramer v. Time Warner, Inc., Id. (Attached to Declaration of Kenneth R. Silverman, Exhibit 2).

The book by Janet Jackson, which plaintiff alleges contains the copyrighted images, is clearly not a periodical, or a newspaper. As this was the first publication of the photographs, they were not eligible to be registered as a group work under Section 408 (c) of the Copyright Act.  Plaintiff's misrepresentation to the Copyright Office that he was registering the individual photographs in one registration as a group work invalidates the copyright registration in these works. Whimsicality, Inc. v. Rubie's Costume Co., Inc., 891 F.2d 452, 456 (2d Cir. 1989); Russ Berrie & Company v. Jerry Elsner, 482 F. Supp. 980, 1980 U.S. Dist. Lexis 9824, 205 U.S.P.Q. (BNA) 320 (S.D.N.Y. 1980); Cf. Morris v. Business Concepts. Inc., No.99-cv-(RCC), 2000 U.S. Dist. Lexis 3835, 54 U.S.P.Q.2d (BNA) 1561 (S.D.N.Y. Mar.28, 2000) (holding individual author had no valid registration to discrete work in registered compilation absent individual registration of each article.) Absent valid registration of the photographs, the Court lacks subject

matter jurisdiction over plaintiff's claim for copyright infringement, and the claim must be dismissed. FRCP 12 (b) (1); 17 U.S.C. 411. (a).

Plaintiff's Second Misrepresentation to the Copyright Office was that the year of publication for the allegedly copyrighted Monroe pictures was 1999. As discussed above, the copyright notice for the Janet Jackson book indicates the year of publication as 1972. However, Plaintiff's Copyright Registration information demonstrates that he represented to the Copyright Office that the photographs were published in 1999. This misrepresentation in itself invalidates the copyright registration. <u>Whimsicality, Inc. v. Rubie's Costume Co., Inc.</u>, Id; <u>Russ Berrie & Company v. Jerry Elsner, Id; Morris v. Business Concepts, Inc.</u>, Id. Absent valid registration of the photographs, the Court lacks subject matter jurisdiction over plaintiff's claim for copyright infringement, and the claim must be dismissed. FRCP 12 (b) (1); 17 U.S.C. 411. (a).

Plaintiff's third misrepresentation to the Copyright Office concerned what was being deposited pursuant to the copyright registration. Taking as true what is being alleged in the Complaint, there is nothing asserted which would indicate Plaintiff ever had access to the original photographs which he alleges he registered with the Copyright Office. The allegations indicate Defendant Morgan claimed possession of the photographs in October, 2003 (paragraph 8), and that the Plaintiff asserted sole ownership in January, 2004 and obtained a copyright registration in August, 2004 (paragraph 10 and 11). Plaintiff does not allege that he ever possessed the photographs. This lack of access would have made it impossible for the plaintiff to comply with the Copyright Act's deposit requirement, which requires two complete copies of the best edition. 17 U.S.C. 407 (1). As he alleges he obtained a valid copyright registration for all

14

of the individual photographs, this could only have been possible if Plaintiff had misrepresented what he was depositing.

A failure to meet the deposit requirement under the Copyright Act invalidates the registration. See Torres-Negron v. J & N Records, LLC , 504 F.3d 151, 84 U.S.P.Q.2d 1769 (United States Court of Appeals, First Circuit 2007) (Holding registration invalid where holder did not have access to original recording and registered reproduced song.) The depositing of something other than copies of the individual Monroe photographs casts a fatal blow to the plaintiff's claim of valid copyright registration. Torres at 158, quoting Syntek Semiconductor Co. v. Microchip Tech. Inc., 307 F.3d 775, 781 (9th Cir. 2002) ("The submission of something other than a "copy" to satisfy the deposit requirement cannot be classified as an "immaterial" mistake because the failure to submit a valid copy would affect the Copyright Office's issuance of a certificate.)  As the Plaintiff misrepresented to the Copyright Office what was being deposited in connection with his copyright registration, the copyright registration is invalid, and therefore the Court lacks subject matter jurisdiction. 17 U.S.C. 411; FRCP 12 (b) (1).

Additionally, it must be noted that the new allegations in paragraph fourteen (14) and fifteen (15) of the Second Amended Complaint are facially implausible, and fail to state a claim under FRCP 12 (b) (6). The allegation in these paragraphs is that the defendants provided the copyrighted photographs that were included in the Janet Jackson book. These allegations cannot possibly be true, as Defendant Keya Morgan was not yet born at the time of the book's publication in 1972. Keya Morgan's Declaration states that he was born after the publication of the book (Declaration of Keya Morgan, Paragraph 3). Plaintiff's allegations do not raise a reasonable expectation that discovery will reveal

evidence that the defendants engaged in the copyright violations alleged in these paragraphs. Bell Atlantic v. Twombly, Slip. Opinion, No. 05-1126 (2007). Absent access to the alleged copyrighted material, the defendants simply could not have done what was alleged. *Universal Athletic Sales Co. v. Salkeld*, 340 F. Supp. 899 (W.D.Pa.1972), *rev'd on other grounds*, 511 F.2d 904 (3d Cir. 1975), Russ Berrie & Company, Inc.v. Jerry Elsner Co., Inc., 482 F. Supp. 980, 987 (S.D.N.Y. 1980); 1980 U.S. Dist. Lexis 9824, 205 U.S.P.Q. (BNA) 320. As Plaintiff has not made a prima facie showing that defendants had access to the photographs at a time that would have made it possible to provide them to whoever published the book by the author Janet Jackson in 1972, the Court should dismiss Plaintiff's cause of action for Copyright Infringement and the Complaint in its entirety. FRCP 12 (b) (6).

Defendants further note that the copyright registration of August 3, 2004 is more than five (5) years past the date of first publication, and therefore not prima facie evidence of the copyright and the facts stated in the certificate. 17 U.S.C. 410 (c). It must also be pointed out that Plaintiff is not eligible for statutory damages or attorney's fees, due to the fact that registration did not occur within three (3) months of the first publication of the work(s). 17 USC 412 (2).

B.    The Court Has No Jurisdiction Over the State Law Conversion Claim

1.Preemption of State Law Claim Under the Copyright Act - 17 U.S.C. 301

Plaintiff's Second Cause of Action for Conversion is preempted by the United States Copyright Act, Section 301 (a). Specifically, the statute states:

(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 [17 USCS Sect. 106] in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 [17 USCS Sects. 102 and 103], whether created before or after that date and whether published or unpublished, are governed exclusively by this title [17 USCS Sects. 101 et seq.]. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

Plaintiff, in his conversion claim alleges that he is the "rightful heir to the Estate of Carl Perutz with a full right to assert the exclusive copyright provided under the law (paragraph 24); that "Defendants have been and continue to substantially interfere with plaintiff's copyright interest in the Monroe pictures" (paragraph 25); and that " Even though the defendants were aware that the Plaintiff has full copyright to the Monroe pictures, Defendants refuse and continue to refuse to honor the copyright (paragraph 26). The Plaintiff then alleges that "In addition, Defendants Keya Morgan and Keya Gallery have been and continue to be in possession of the Monroe pictures. Defendants have, without authority, intentionally exercised control over the Monroe pictures and thereby interfered with Plaintiff's rights related to the Monroe pictures. As a result, Defendants have converted the Monroe pictures for their own use" (Paragraph 27).

Plaintiff appears to be putting forth the legal theory that as the alleged rightful copyright owner to the "Monroe pictures", he also obtains legal title to the actual Monroe photographs the defendants purchased at auction in 2003 (Paragraph 8). Plaintiff has fundamentally misconceived the nature of his alleged rights to his father's intellectual property, as copyright interests pass separately from the right to the physical object. 17 U.S.C. 202; 17 U.S.C. 106. Plaintiff has not alleged that the defendants' acquisition of the Monroe photographs at auction was wrongful. (See Salinger v. Random House, 811 F.2d 90, 95 (2d Cir. 1987), where the Court holds that that the

owner of letters has the rights to the physical letters and access to them and the author of the letters owns the copyright therein.)

It is clear that plaintiff's state law claim for Conversion merely seeks to use the Plaintiff's alleged Copyright ownership as a means to assert title and possession of the actual photographs. As such, Plaintiff's state law claim for Conversion is preempted by the Copyright Act. The Copyright Act preempts a state cause of action if the subject matter of the state law falls within the subject matter of federal copyright law and the state law rights are equivalent to the rights federal copyright protects. Netzer v. Continuity Graphic Associates, Inc., 963 F.Supp. 1308, 1321 (S.D.N.Y. 1997). As the State law claim for Conversion is preempted by the United States Copyright Act, it is proper for the Court to dismiss Plaintiff's Complaint on that basis. 17 U.S.C. 301, FRCP 12 (b) (1), FRCP 12 (b) (6).

It must also be pointed out that the Plaintiff has failed to state a claim for Conversion under New York State Law. Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights. Vigilant Ins. Co. of Am. v. Hous. Auth., 87 NY2d 36, 44 (1995). Plaintiff has not alleged ownership in the physical pictures, nor has he alleged that Defendants purchase of the photographs at auction was wrongful.

## 2.The Court Does Not Have Diversity Jurisdiction Over the State Law Claim- 28 U.S.C. 1332

Apart from the state conversion claim being preempted by the United States Copyright Act, the claim as alleged does not meet the Diversity Jurisdiction requirements under 28 U.S.C. 1332. The Second Amended Complaint seeks actual and statutory damages under the Copyright Act. As to the amount in controversy for the conversion claim, the complaint is silent. However, this amount can easily be established, due to the fact that the Defendants are in possession of the receipt

from Swan Auction House, which shows the amount paid for the Contact Sheets. All documents attached to and referred to in the complaint and matters of judicial notice are properly before the Court. Cortect Indust's. Inc. v. Sum Holding L.P., supra; Kramer v. Time Warner, Inc., supra. Therefore, the inclusion of the receipt from Swan Auction house is proper for consideration on this motion to dismiss. (Attached to Declaration of Keya Morgan, Exhibit 1).

The receipt indicates that on May 15, 2003, the Defendants purchased Contact Sheets only, not photographs or negatives. The receipt establishes that the cost of the Contact Sheets was $3,800.00. Diversity jurisdiction requires an amount in controversy of $75,000. 28 U.S.C. 1332. It must be assumed that the auction at Swan provides the most accurate assessment of the fair market value of the digital contact sheets. Since the contact sheets the Defendants purchased fall far short of the $75,000 amount in controversy required for Diversity jurisdiction, the state claim for Conversion must be dismissed.

POINT III. 17 U.S.C. 505 Defendants Are Entitled To Attorney's Fees

Pursuant to 17 U.S.C. 505, the Court may award either party's attorneys' fees. The Defendants are entitled to such an award for reasonable costs and fees incurred in defending facially deficient claims. A Defendant should be awarded attorney's fees where plaintiff's claims are objectively without merit, or based on bad faith. Whimsicality, Inc. v. Rubie's Costume Co., Inc., 891 F.2d 452, 457 (2d Circuit, 1989). As outlined in this brief, defendants are entitled to such an award for having to defend facially deficient claims based on a registration procured by misrepresentation, causes of action that were clearly time-barred under the statute of limitations, and implausible due to lack of access by the defendants to the allegedly copyrighted photographs and negatives. 17 U.S.C. 505.

CONCLUSION

For all of the foregoing arguments, Defendants move this Court to Dismiss Plaintiff's Complaint in its entirety, award reasonable costs and attorney's fees, together with such other and further relief as this Court deems just and proper.

Respectfully submitted,

By: _S/_ ~~~~~~~~~~

     Kenneth R. Silverman
     Attorney for Defendants
     Keya Morgan and Keya
     Gallery

Kenneth R. Silverman, Esq.
Attorney for Defendants Keya Morgan
And Keya Gallery
32 Middagh Street, #16
Brooklyn, NY 11201
(718) 852-3082

_____ ____X

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____X          ELECTRONICALLY FILED

PETE LIVINGSTON,                             No. 07 CV 7835 (RMB) (KNF)

                Plaintiff

                                             DECLARATION OF KENNETH R.
                                             SILVERMAN IN SUPPORT OF
                                             DEFENDANT KEYA MORGAN
                                             AND KEYA GALLERY'S
                                             MOTION TO DISMISS

v.

KEYA MORGAN AND KEYA
GALLERY,
                Defendants,
_____X

I, Kenneth R. Silverman, declare:

1.  I am the attorney in this action for the defendants Keya Morgan and Keya Gallery. I am

    licensed to practice law in the United States District Court, Southern District of New

    York.


2.  I have personal knowledge of all matters stated herein and, if called as a witness I could

    competently testify thereto, except as to those matters stated upon information and belief

    and to those matters I believe them to be true.

3. Attached hereto as Exhibit 1 is a true and correct copy of the search result from the United States Copyright Office for Carl S. Perutz, dated March 20, 2008. I obtained the Copyright search result by printing it from the United States Copyright Office website on March 20, 2008.

4. Attached hereto as Exhibit 2 is a true and correct copy of the book "Marilyn Monroe" by author Janet Jackson. I obtained this copy of the book by downloading it from Pacer, item #100 in the Docket Report of the action Livingston v. Morgan, U.S. District Court, California Northern District, No. 06-CV-02389. I attempted to locate the book by internet search but was unsuccessful.

5. This book was electronically filed by William M. Simpich, Attorney for Plaintiff Pete Livingston in the California Action. Mr. Simpich's Declaration, which is Pacer item # 90 in the Docket Report of the California Action, states he obtained a true and correct copy of the book from defendant Nova Wines, Inc. in the course of discovery.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

Executed in Brooklyn, New York April 5, 2008

Kenneth R. Silverman
Attorney for Defendants Keya Morgan
and Keya Gallery

# EXHIBIT 1



### Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Name = Perutz Carl
Search Results: Displaying 1 of 2 entries



**Labeled View**

*Carl S. Perutz photos of Marilyn Monroe.*

|  |  |
|---|---|
| **Type of Work:** | Visual Material |
| **Registration Number / Date:** | VA0001266038 / 2004-08-03 |
| **Title:** | Carl S. Perutz photos of Marilyn Monroe. |
| **Description:** | Digital contact sheets. |
| **Copyright Claimant:** | Pete Livingston |
| **Date of Creation:** | 1960 |
| **Date of Publication:** | 1999-09-21 |
| **Authorship on Application:** | Carl Perutz, 1921-1981. |
| **Names:** | Livingston, Pete |
|  | Perutz, Carl, 1921-1981. |



### Save, Print and Email (**Help Page**)

Select Download Format ⎡Full Record⎤     Format for Print/Save⎤
Enter your email address: ⎡                    ⎤     Email⎤

Help  Search  History  Titles  Start Over

Contact Us | Request Copies | Get a Search Estimate | Frequently Asked Questions (FAQs) about Copyright
Copyright Office Home Page | Library of Congress Home Page

# EXHIBIT 2

# MARILYN MONROE

by Janet Jackson

## Published by Cornerstone Press

Copyright © 1972 by Janet Jackson
All Rights Reserved

PRINTED IN THE UNITED STATES OF AMERICA

NWP1-0141

INTRODUCTION

The following 53 photographs of Marilyn Monroe were taken in 1956 by Japanese-born fashion photographer Takashi Oyama, in New York City. We are very grateful to Kathy Smith for bringing them to our attention. Although a few of these photographs have been published in the past, this is the first time that they are being published in their entirety and made available to the public. It is safe to say that there will be something new here for even the most dedicated devotees of Marilyn, even though these photographs were taken approximately 15 years ago. We feel fortunate to be able to share them with you in this publication. We are forever indebted to Mr. Takashi Oyama for not only giving us the permission to publish these splendid photographs, but also for taking the time to share his memories with us.

This grouping of photographs represents an hour of Marilyn's life with a rare glimpse through the photographer's lens, exactly as the artist saw her. Most photographers would never show anyone their less than perfect shots, let alone dare to publish them. Though every single shot may not be considered a perfect portrait at first glance, they give us a candid inside view that allows us to see Marilyn as a real person. We can see she changed hats four times, pinned her hair up in some shots and let it down in others, and she even took two shots without her shirt.

3

Marilyn Monroe is considered the most photographed female of the 20th century, yet we still can't seem to get enough of her. Even though it would be nearly impossible to count the number of photographs that were taken of her or the amount of sittings that she gave to photographers, each new photograph we encounter is as exciting and refreshing as the first one we saw. There is a radiant quality about her photographs which transcends time and place. Her smile so innocent and sweet, her eyes so vulnerable, her facial expression so tender.

It is hard to believe that it is 10 years since she was taken away from us. At the time of her death she had reached the pinnacle of her career and was a role model for just about every girl under the sun. Her everlasting beauty is captured for all to see through these wonderful photographs.

NWP1-0143

The following is a Q&A with Takashi Oyama
who took these beautiful photographs of
Marilyn Monroe.

QUESTION:  How did you meet Marilyn Monroe?

ANSWER:  I met Ms. Marilyn Monroe through
my friend Warren Fischer.

QUESTION:  Who was Warren Fischer and what
did he do?

ANSWER:  Warren Fischer was a very good
friend and a good person.  He worked on
Wall Street and was a stockbroker.  I met
him at a fashion party in the early 1950s
and we became good friends.

QUESTION:  What year did you take the
photographs of Marilyn Monroe?

ANSWER:  1956

QUESTION:  What was the relationship be-
tween Marilyn Monroe and Warren Fischer?
Do you think they could have been lovers?

ANSWER:  I think they were only friends
and I would never ask any private ques-
tions from him.  I do remember that they
would have secret meetings every Friday
at the St. Regis to have a drink and to
talk.  I never asked him what they spoke
about.

QUESTION:  There are rumors that Warren
Fischer was being paid by the FBI or the
mafia to befriend Marilyn in order to spy

5

on her. Do you think there is any truth
to this?

ANSWER: No, I do not believe that Warren
was a FBI agent or mafia man. I have also
heard this from other people, but I do not
believe it. During World War Two every-
body thought that all the Japanese living
in the United States were spies but that
was obviously not true and it hurt a lot
of people. Even if he was a FBI agent, he
was a very nice man and would never hurt
anyone.

QUESTION: Why do you say that the meetings
were secret?

ANSWER: Because Warren never talked about
what he was saying to her and she was a big
movie star. I was very impressed and ex-
cited by the fact that Warren Fischer was
friends with Ms. Marilyn Monroe.

QUESTION: How many photographs did you
take at that sitting?

ANSWER: 53

QUESTION: Did you ever photograph her
again?

ANSWER: No, but Ms. Monroe told me she
liked my photographs a lot and that she
wanted me to photograph her again. After
she married Arthur Miller it got hard for
me and Warren to contact her. Mr. Miller
was very protective of her.

6.

NWP1-0145

QUESTION:  Where were the photographs taken?

ANSWER:  I took the photographs in New York City at a studio I rented.

QUESTION:  What was it like to actually meet Marilyn Monroe?

ANSWER:  She was very beautiful.  She was also very kind, polite and a fun person to be around.  I will never forget that day, it was very special.  She made me feel like I was a very important person and she was just a girl.

QUESTION:  Which photograph is your favorite shot from this group?

ANSWER:  My favorite photograph is the one of Marilyn Monroe and Warren.  It brings back many good memories.  That is all I have now, memories.  My friend Warren died only a few years after Marilyn.  Two young people who are both gone now.

QUESTION:  Do you think that Marilyn Monroe could have been murdered?

ANSWER:  Yes, but I am not sure.

QUESTION:  There is a photograph of an unidentified man by himself.  Who is he, and why is his photograph in the middle of all the Marilyn shots?

ANSWER:  He was my assistant, and Ms. Monroe said she could be a photographer too.  She jumped up and ran to my camera

and photographed my assistant, it was very funny.

QUESTION:  Did you make a lot of money from the photographs?

ANSWER:  No, it was an honor to photograph Ms. Monroe, and I gave the negatives to my friend Warren as a thank you.  Ms. Monroe also signed one of the photographs for me, which I still have.

QUESTION:  Who is your favorite photographer?

ANSWER:  I like Edward Steichen.

QUESTION:  How did you get interested in photography?

ANSWER:  My father gave me a camera when I was 10 years old, and I really liked it. After school, I decided to do what I really liked, which was photography.  But my parents wanted me to become a doctor and photography is not a very prestigious job in Japan.  I moved to the United States because of my girlfriend and became a fashion photographer in New York City.  I think photography is an art if you do it correctly.

QUESTION:  Is Marilyn Monroe as popular in Japan as she is in the United States?

ANSWER:  Yes, very much.  Maybe even more in Japan.

QUESTION:  Do you have a favorite Marilyn

Monroe movie?

ANSWER:  Some Like it Hot.

Thank you very much for taking the time to
answer our questions.

9

NWP1-0148



NWP1-0149



31

NWP1-0150



NWP1-0151



13

NWP1-0152



NWP1-0153





NWP1-0155



17

NWP1 0156





17

NWP1-0158





NWP1-0160



NWP1·0161



NWP1-0152



NWP1-0163



25

NWP1-0154



NWP1-0165



27

NWP1-0166





29

NWP1 0168



NWP1-0169



31



NWP1-0171



NWP1 0172



NWP1-0173



35

NWP1-0174



NWP1-0175



37

NWP1-0176



NWP1-0177



39

NWP1-0173



NWP1-0179



NWP1 0180



NWP1-0181



43

NWP1-0182





45

NWP1-0184



NWP1-0185



NWP1-0166



NWP1-0187



NWP1-C188



NWP1-0189



51

NWP1-0193



NWP1-0191




53

NWP1-0192





55

NWP1-0194



Even years after her death, Marilyn Monroe
continues to bring joy to the hearts of
millions of her fans and admirers around
the world.  From her humble beginnings to
her untimely death, she maintained a royal
poise and dignity that was unsurpassed.
She was warm, funny, intelligent and most
importantly, a compassionate human being.
We hope that these wonderful photographs
have in some small way helped to memori-
alize the image of Marilyn Monroe at her
best.

56

Kenneth R. Silverman, Esq.
32 Middagh Street, #16
Brooklyn, NY 11201
(718) 852-3082
Fax (718) 852-3082

Attorney for Defendants, KEYA MORGAN and KEYA GALLERY

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE SOUTHERN DISTRICT OF NEW YORK


| | | |
|---|---|---|
| PETE LIVINGSTON, | ) | No. 07-CV 7835 |
| Plaintiff, | ) | DECLARATION OF KEYA MORGAN IN SUPPORT OF MOTION TO DISMISS |
| v. | ) | |
| KEYA MORGAN and KEYA GALLERY, | ) | Submission Date: April 8, 2008 |
| Defendant. | | Courtroom: 706 |
| | ) | Hon. Judge Richard Berman |

I, KEYA MORGAN, declare as follows:

1. My name is KEYA MORGAN, not KEYARASH MAZHARI, or KEYA MAZHARI, as alleged in the complaint. I operate a business known as Keya Gallery. I have personal knowledge of all matters stated herein and, if called as a witness I could competently testify thereto, except as to those matters stated upon information and belief and to those matters I believe them to be true.

2. On May 15, 2003, I won at auction five Contact Sheets, containing 1" x 1" images of Marilyn Monroe from Swan Auction Galleries. I purchased only these five contact sheets, and did not purchase, and therefore did not acquire original photographs or

negatives. Upon winning this item at auction, I was given a receipt from the Auction house. The receipt shows that the cost of the Marilyn Monroe Contact sheets was $3,800.00 (Exhibit 1).

3. It is impossible that I could have provided the photographs that appeared in the Janet Jackson book "Marilyn Monroe" in 1972 (paragraphs 14 and 15 of the Second Amended Complaint). I was born several years after the publication of that book.

I declare, under penalty of perjury, under the laws of the State of New York, that the foregoing is true and correct.

Executed this 5th day of April, 2008, at New York City, New York

Keya Morgan

# EXHIBIT 1



# SWANN S

## AUCTION GALLERIES

104 East 25th Street  New York, NY 10010
Telephone 212 254 4710  Fax 212 979 1017
www.swanngalleries.com

KEYA GALLERY
PO BOX 7412
NEW YORK NY 10116

Bidder # 231        Customer #46910
**1971 PHOTOGRAPHIC LITERATURE & PHOTOGRAPHS**
Sale Date: 05/15/2003 10:30 AM

Number of Lots: 5
Invoice # 61235        Date 05/15/2003

| LOT # | DESCRIPTION | PRICE |
|---|---|---|
| 181 | (TECHNICAL.) The Photograph and Ambrotype Manual: A Practical Treatise on the Art of Taking Positive and Negative Photographs on Paper | 375.00 |
| 234 | (LINCOLN, ABRAHAM) brady, mathew; gardner, alexander Group of 3 photographs of Lincoln, | 400.00 |
| 321 | CURTIS, EDWARD S. "The Vanishing Race." | 4,000.00 |
| 370 | JACKSON, ROBERT Jack Ruby shooting Lee Harvey Oswald * Portrait of Jack Ruby. Together, 2 photographs, the first by Jackson. | 600.00 |
| 461 | PERUTZ, CARL Group of 5 contact sheets of various portraits of Marilyn Monroe. | 3,800.00 |

|  |  |
|---|---|
| Hammer Total | 9,175.00 |
| Buyer's Premium | 1,376.25 |

FOR RESALE # NY 33153740

| TOTAL | 10,551.25 |
|---|---|

4600

5951.25

Kenneth R. Silverman, Esq.
32 Middagh Street, #16
Brooklyn, NY 11201
(718) 852-3082
Fax (718) 852-3082

Attorney for Defendants, KEYA MORGAN and KEYA GALLERY

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PETE LIVINGSTON, | ) | No. 07-CV 7835 |
| Plaintiff, | ) | DECLARATION OF KENNETH R. SILVERMAN IN SUPPORT OF MOTION TO DISMISS |
| v. | ) | |
| KEYA MORGAN and KEYA GALLERY, | ) | REPLY Date: April 30, 2008 |
| Defendant. | | Courtroom: 706 |
| | ) | Hon. Judge Richard Berman |

I, Kenneth R. Silverman, declare as follows:

1.  I am the attorney in this action for the defendants Keya Morgan and Keya Gallery. I am licensed to practice law in the United States District Court, Southern District of New York.

2.  I have personal knowledge of all matters stated herein and, if called as a witness I could competently testify thereto, except as to those matters stated upon information and belief, and to those matters I believe them to be true.

3.  Attached hereto as Exhibit 1 is a true and correct copy of the Second Amended Request For Dismissal of Nova Wine's, Inc. with Prejudice and Dismissal of Keya Morgan and

Keya Gallery without prejudice, Ordered by Judge Chesney on February 4, 2008. I

obtained this Document by downloading it from Pacer, Docket Entry #220 for

Livingston v. Morgan, case No. 06-02389.

4.  Attached hereto as Exhibit 2 is a true and correct copy of the original Complaint for

Livingston v. Morgan, Case No. 06-02389, filed in United States District Court, Northern

District of California, on April 5, 2006. I obtained this Document by downloading it

from Pacer, Docket Entry #1.

I declare, under penalty of perjury, under the laws of the State of New York, that the

foregoing is true and correct.

Executed this  27th day of April, 2008, at Brooklyn, New York

Kenneth R. Silverman

# EXHIBIT 1

1

2

3   WILLIAM M. SIMPICH, SBN #106672
    1736 Franklin Street, Tenth Floor
    Oakland, California 94612
4   Telephone: (510) 444-0226

5   TESFAYE W. TSADIK, SBN #108103
    1736 Franklin Street, Tenth Floor
6   Oakland, California 94612
    Telephone: (510) 839-3922
7
    Attorneys for Plaintiff
8   PETE LIVINGSTON

9           IN THE UNITED STATES DISTRICT COURT

10       IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

11   PETE LIVINGSTON,                 | Case No. C06-02389 MMC

12       Plaintiff,                   | SECOND AMENDED REQUEST
                                      | FOR DISMISSAL OF NOVA WINES, INC.
13       v.                           | WITH PREJUDICE AND DISMISSAL OF
                                      | KEYA MORGAN aka KEYARASH
14   KEYA MORGAN aka KEYARASH         | MAZHARI aka KEYA MAZHARI, AND
     MAZHARI aka KEYA MAZHARI, KEYA   | KEYA GALLERY WITHOUT
15   GALLERY, NOVA WINES, INC.,       | PREJUDICE, AND ISSUANCE OF
                                      | CORRECTED ORDER ; ORDER
16
17       Defendants.

18

19

20

21

22       Plaintiff Pete Livingston requests that this case be dismissed with prejudice against

23   Defendant Nova Wines, Inc., based on the Settlement Agreement filed under seal and Plaintiff's

24   Motion for Administrative Relief to File Settlement Agreement Under Seal.

25       Plaintiff Pete Livingston further requests that Defendants  Keya Morgan aka Keyarash

26   Mazhari aka Keya Mazhari and Keya Gallery be dismissed without prejudice.

27       This corrected order shall replace the order issued on January 22, 2008.

*Second Amended Request for Dismissal*
*C-06-2389 MMC*

1

2

3    Dated: February 1, 2008

4                                                        _____/s/_____
                                                        WILLIAM M. SIMPICH
5                                                        Attorney for Plaintiff

6    It is so ordered.

7

8    Dated: February 4 , 2008

9                                                        HON. MARILYN M. CHESNEY
                                                         HON. MAXINE M. CHESNEY
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

*Second Amended Request for Dismissal*
C-06-2389 MMC
                                    2

# EXHIBIT 2

1

2   WILLIAM M. SIMPICH, SBN #106672
    1736 Franklin Street, Tenth Floor
3   Oakland, California 94612
    Telephone: (510) 444-0226
4
    TESFAYE W. TSADIK, SBN #108103
5   1736 Franklin Street, Tenth Floor
    Oakland, California 94612
6   Telephone: (510) 839-3922

7   Attorneys for Plaintiff
    PETE LIVINGSTON
8

9                    IN THE UNITED STATES DISTRICT COURT

10              IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12   PETE LIVINGSTON,                          Action No. _____

13         Plaintiff,                          COMPLAINT FOR DAMAGES AND
                                               INJUNCTIVE RELIEF (Jury Demand)
14         v.
                                               1.  Copyright infringement
15   KEYA MORGAN aka KEYARASH                  2.  Conversion
     MAZHARI aka KEYA MAZHARI, KEYA            3.  Business & Professions Code 17200 *et*
16   GALLERY, NOVA WINES, INC., JANINA         *seq.*
     GEHN aka NINA GEHN, &
17   NTG/XLink,

18         Defendants.

19

20

21      Plaintiff Pete Livingston alleges:

22

23                              **NATURE OF ACTION**

24         1.  This is an action for copyright infringement and related state law claims arising from the

25   willful misconduct of all defendants in this action.    Plaintiff Pete Livingston is the sole heir of his

26   father's photographic work.    Keya Morgan and Keya Gallery claim to have in their possession 58

27   copyrighted photographs of Carl Perutz, and willfully and knowingly violated the copyright laws

28   (17 U.S.C. §101 et seq.) by distributing and offering to distribute the photographs. These

1

2     defendants also suborned infringement through the website www.marilyn-online.de which

3     promoted the sale and distribution of these copyrighted photographs.

4          Defendants Janina Gehn aka Nina Gehn and NTG/Xlink created a website in Frankfurt,

5     Germany which advertised the sale and distribution of this copyrighted photographs.   Defendants

6     Nova Wines, Inc. knowingly took at least one image of Perutz' Monroe photographs from the

7     aforementioned German website and created a derivative work from it without securing rights to

8     Perutz's photograph. They placed that derivative work on their wine bottles, posters, other

9     commercial artwork, websites, and publicity photos to make money for themselves throughout the

10    world.

11         Pete Livingston seeks in this action, among other things, immediate injunctive relief

12    ordering defendants to stop the infringement and distribution. The need for injunctive relief is

13    critical: (1) Pete Livingston will prevail on the merits of his copyright and other claims; (2)

14    Without injunctive relief Livingston will continue to suffer irreparable harm; (3) No public interest

15    is served by defendants' continued infringement and distribution.

16                                              **PARTIES**

17         2. Plaintiff Livingston is an individual who is a resident of Contra Costa County and the

18    legal heir to the estate of Carl Perutz.

19         3. Defendant Keya Morgan aka Keyarash Mazari aka Keya Mazari is an individual who

20    resides in the City of New York.

21         4. Defendant Keya Gallery is a business entity which is owned by Keya Morgan and has its

22    principal office in New York City.

23         5. Defendant Nova Wines, Inc. is a California corporation that does business in St. Helena,

24    California. Robert L. Holder is the president of said corporation.

25         6. Defendant Janina Gehn aka Nina Gehn is the creator of the website known as

26    marilyn-merlot.de and bears responsibility for its content.

27         7. Defendant NTG/Xlink is the owner of the website described above.

28    ///

2

**JURISDICTION AND VENUE**

8. This is a civil action seeking, *inter alia*, damages and injunctive relief for copyright infringement under the copyright law of the United States (17 U.S.C.§§101 et seq.) This Court has jurisdiction of this action under 17 U.S.C. 101 et seq. and 28 U.S.C. §§1338(a) and (b). The court has supplemental jurisdiction over the related claims and in that these claims are so related to the above federal claims that they form part of the same case or controversy. This Court has personal jurisdiction over defendants in that, the act of infringement that is the basis of this action occurred in this District as each defendant, without consent or permission of the Plaintiff exclusive rights owner, distributed and offered to distribute copyrighted work for which the Plaintiff has exclusive rights. In addition, each Defendant contracted with an Internet Service Provider found in Germany to provide California residents with access and acquisition of the copyrighted materials complained of herein occurred in the State of California and in this District. Venue is proper in this District pursuant to 28 U.S.C. §§1391(b) and (c).

**GENERAL ALLEGATIONS**

9. Carl Perutz was the copyright holder of numerous photographic prints, negatives, and contact sheets depicting Marilyn Monroe, hereinafter "Monroe pictures", prior to his death on November 20, 1981. Each of the Monroe pictures are the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights on August 3, 2004.

10. At all relevant times, Plaintiff Pete Livingston is the heir of the estate of Carl Perutz, the holder of the copyrighted Monroe pictures.

11. On or about October 22, 2003, plaintiff Livingston learned that Defendant Keya Morgan claimed possession of a number of Monroe pictures. During the week of January 16, 2004, Keya Morgan contacted the Plaintiff and informed him that he obtained at auction 58 original Marilyn Monroe prints (some with Carl Perutz named stamped on the back) as well as negatives and contact sheets. Defendant Morgan stated that he was interested in working out some kind of publishing and signing arrangement with the Plaintiff.

12. Plaintiff is informed and believes that Defendant Keya Morgan, without the consent

3

1

2    and permission of Plaintiff, suborned infringement through the website www.marilyn-online.de,

3    which in turn promoted the sale and distribution of these copyrighted photographs to the other

4    Defendants and other unknown individuals and entities. These photographs were the property and

5    the exclusive copyrighted work of Carl Perutz. Plaintiff registered his copyright on August 3,

6    2004, and notified all of the Defendants of his copyright during that month. Although notified that

7    the Plaintiff held the copyright to the Perutz photographs, these Defendants ignored him and

8    continued to use the photographs for monetary purposes. Plaintiff further declares that the Monroe

9    pictures belong to him and to no other party.

10    13. Defendants are agents of one another, and have acted in concerted activity with one

11    another in action that has resulted in damage to Plaintiff's property rights. Plaintiff has suffered

12    and continues to suffer immediate and irreparable harm, including the loss of money and property,

13    as a result of Defendants the violation of his copyrights.

14    **FIRST CAUSE OF ACTION**
      (Copyright Infringement against Defendants - all Defendants)

15

16    14. Plaintiff incorporates by reference herein the allegations set forth in Paragraph 1

17    through 13 above.

18    15. Plaintiff is informed and believes that Defendants, without his permission and consent,

19    have used, and continue to use, distribute and offer for distribution including by making them

20    available for distribution and offer to potential customers on online media the copyrighted

21    photographs described herein as the "Monroe Pictures". In doing so, each Defendant has violated

22    Plaintiff's exclusive rights of reproduction and distribution. The acts of each of the Defendants,

23    therefore, constitutes infringement of the plaintiff's exclusive rights protected under the Copyright

24    Act of 1976 (17 U.S.C. §101 et seq.)

25    16. The foregoing acts of infringement have been willful, intentional, and in disregard of

26    and with indifference to the rights of Plaintiff.

27    17. As a result of each Defendant's infringement of Plaintiff's exclusive rights under

28    copyright, the Plaintiff is entitled relief pursuant to 17 U.S.C. §504, and his attorneys' fees and

4

costs pursuant to 17 U.S.C. §505.

18. The conduct of each Defendant is causing and, unless enjoined and restrained by this Court will continue to cause, Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiff's copyright.

WHEREFORE, Plaintiff prays for judgment against each Defendant as set forth below.

**SECOND CAUSE OF ACTION**
(Conversion - all Defendants)

19. Plaintiff incorporates by reference and reallege paragraphs 1 through 18 as though set forth in full.

20. Plaintiff is the rightful heir to the estate of Carl Perutz with a full right to assert the exclusive copyright provided under the law.

21. Each of the Defendants have been and continue to substantially interfere with Plaintiff's copyright interest in the Monroe pictures, which exclusively belonged to Carl Perutz and have passed to Plaintiff, a legal heir.

22. Even though Defendants were aware that Plaintiff has claimed that he has full copyright to the Monroe pictures, Defendants refuse and continue to refuse to honor the copyright.

23. In addition, Defendants Keya Morgan and Keya Gallery have been and continue to be possession of the Monroe pictures which exclusively belong to Carl Perutz and through his estate to Plaintiff, a legal heir.

24. Even though Defendant Morgan and Keya Gallery are aware that plaintiff challenged their ownership of the Monroe pictures, Defendants refuse and continue to refuse relinquishing ownership. Plaintiff asks this court for injunctive and declaratory relief to restore ownership of the Monroe pictures to him.

25. As a proximate result of Defendants' conduct, Plaintiff has suffered and continue to suffer damages in the amount to be established at trial.

5

1

2      26. The aforementioned acts of Defendants were willful, wanton, malicious, and

3   oppressive and justify the awarding of exemplary and punitive damages.

4                         **THIRD CAUSE OF ACTION**
        (Business and Professions Code Section 17200 *et seq.* - all Defendants)
5

6      27. Plaintiff incorporates by reference and reallege paragraphs 1 through 26 as though set

7   forth in full.

8      28. Defendants' actions have violated Business and Professions Code Section 17200 et seq.

9   by engaging in unlawful, unfair and/or fraudulent acts or practices as described above.  Defendants

10  must disgorge all profits obtained as a result of their unlawful and unfair actions as described

11  above as well as enjoined to prevent any future loss of property or money suffered by the Plaintiff.

12     29. Defendants have been and continue to be possession of the Monroe pictures which

13  exclusively belonged to Carl Perutz and have now passed to plaintiff, a legal heir.

14     WHEREFORE, plaintiff prays for judgment against the defendants as set forth below:

15     1. Issue a temporary retraining order, as well as a preliminary and permanent injunction,

16  which orders defendants, their employees, agents and assigns from directly or indirectly infringing

17  the plaintiff's right in the copyrighted Monroe pictures, whether now in existence or later created,

18  including without limitation by using the Internet to reproduce or copy any of the photographs; and

19  to immediately relinquish the Monroe pictures to plaintiff and to refrain from distribution or offer

20  distribution any of these photographic images, except pursuant to a lawful license or the express

21  authorization;

22     2. Issue a preliminary and permanent injunction restoring ownership of the Monroe

23  pictures to the plaintiff;

24     3. Declaratory relief as may be appropriate;

25     4. For actual and statutory damages pursuant to 17 U.S.C. §504, at the election of plaintiff;

26     5. For punitive damages;

27     6. For plaintiff's costs and attorneys' fees.

28     7. For such other and further relief as this Court may deem just and proper.

1

2          Dated: April 5, 2006

3

4                                           William M. Simpich
                                            Tesfaye W. Tsadik
5                                           Attorneys for Plaintiff
                                            PETE LIVINGSTON

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28